IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| E. WRAY JOHNSON | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No:_____ |
| | ) |
| | ) |
| FIFTH THIRD BANK, N.A. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff E. Wray Johnson, ("Plaintiff"), by and through counsel, brings this Complaint against Fifth Third Bank, N.A. ("FTB") on the grounds and in the amounts set forth herein:

### Preliminary Statement of Facts

1. In August 2018 Mr. Johnson filed a Chapter 11 bankruptcy petition that included Defendant FTB as one of the creditors. FTB modified its credit reporting for Mr. Johnson to remove any balance, past due balance, or collection status after the filing of the bankruptcy. The bankruptcy court confirmed the plan, and Mr. Johnson began making payments in accordance with the plan. Thereafter, his counsel filed a motion and submitted an order that administratively closed the case, pending the completion of the payment plan. The bankruptcy court entered that order on December 15, 2020. In March 2021, FTB was credit reporting the account as in a Chapter 11 bankruptcy and never late. Inexplicably, FTB modified its account data a few months later to report that the account was 180 days past due beginning in April 2019 and the payment history remained that way through March 2021. Thus, in July 2021 FTB was reporting the trade line as in bankruptcy, 180 days past due during the pendency of the bankruptcy, but without any balance or past due

balance. Despite the fact that Mr. Johnson was still in bankruptcy, making his payments under the plan, and subject to the protections of the stay, FTB began reporting the account as partially in bankruptcy (no balance or past due balance) and partially not in bankruptcy (180 days late). Mr. Johnson paid close attention to his credit scores and trade lines and promptly notified the CRAs that FTB was inaccurately and improperly reporting his account as 180 days in arrears while he was still in bankruptcy and making the plan payments. Rather than review the account data and realize that it was still in bankruptcy, FTB proceeded to modify the data and make the credit reporting for the account even worse and more inaccurate. FTB responded back to the ACDVs by reporting that the account was in a Chapter 11 bankruptcy, but then contradicted that by reporting that it was in collections, 180 days past due during the pendency of the bankruptcy and updating the credit file data to add an inaccurate account balance that ignored the impact of the bankruptcy itself. These conflicting and inconsistent account data fields could not co-exist with an account that was included in a Chapter 11 bankruptcy. As a result, Experian modified its trade line data to reflect that the account was no longer in bankruptcy and was seriously past due. Each time that FTB modified the account data, it made the account more and more negative and inaccurate. Thus, rather than follow proper credit reporting procedures, FTB allowed its processors to report conflicting data that completely disregarded the fact that the account was in bankruptcy and that FTB was continuing to receive payments under the plan. As a result, Plaintiff requests actual damages, statutory damages, punitive damages, attorney's fees, and costs for FTB's repeated violations of the Fair Credit Reporting Act at 15 U.S.C. §1681s-2b(b).

## Parties

2. Plaintiff E. Wray Johnson is a "person" and "consumer" as defined by the FCRA at 15 U.S.C. §1681a(b) and (c) because he is an individual. Unless otherwise specifically stated herein, the term "Plaintiff" shall refer to E. Wray Johnson.

3. Fifth Third Bank, National Association (FTB) is a furnisher of information as contemplated by FCRA section 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer. FTB regularly conducts these business activities in the Eastern District of Virginia by credit reporting and providing retail credit financing to consumers in the Alexandria division of the Eastern District of Virginia.

4. FTB has a recidivist history with regards to consumer financial protection acts. The Bureau of Consumer Financial Protection filed suit against FTB because it has a culture that does not comply with consumer protection laws. The lawsuit specifically noted that "4. Fifth Third has known for more than a decade that its acts or practices have led to the opening of products in consumers' names without the consumers' knowledge or consent." *Bureau of Consumer Financial Protection v. FTB, National Association*, 1:21cv-00262 United States District Court for the Southern District of Ohio Western Division.

## Jurisdiction & Venue

5. This court has jurisdiction pursuant to the Fair Credit Reporting Act 15 U.S.C. §1681 *et. seq.* and 28 U.S.C. §1331. Venue is proper in this jurisdiction and division as the Defendant is subject to personal jurisdiction in the Eastern District of Virginia by virtue of the business that FTB conducts within the division. Because the Defendant is subject to personal jurisdiction in the district and division, venue is proper in this Court.

**Factual Allegations**

6. Mr. Johnson wanted to build a dream home in Springfield, Virginia. He purchased a property with an existing home, and he needed to update and remodel the property. Unfortunately for him, the process has been an enduring nightmare of construction issues, contractor issues, and now credit reporting issues.

7. After suffering through problems related to contractors and the remodel construction of his home, Mr. Johnson was forced to file suit against the general contractor. On August 24, 2018, he had to file a Chapter 11 bankruptcy to stop the foreclosure on the property as he waited on the lawsuit against the contractor. Mr. Johnson included his various creditors in the bankruptcy petition, which was filed as document 1 in the Alexandria Division of the United States Bankruptcy Court for the Eastern District of Virginia, case number 18-12911. For purposes of the credit report accuracy issues at issue in this action, this case focuses on the actions of FTB including how it inaccurately reported that Mr. Johnson owed a charged-off balance for an account that was included in bankruptcy.

8. The Chapter 11 Bankruptcy petition required Mr. Johnson to file a schedule of his assets and liabilities, a schedule of current income and expenditures, a schedule of executory contracts and unexpired leases, and a statement of financial affairs. See https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics/chapter-11-bankruptcy-basics. The process required Mr. Johnson to file a re-organization plan that specified how each class of claims will be treated under the plan. "Creditors whose claims are 'impaired' i.e., those whose contractual rights are to be modified or who will be paid less than the full value of their claims under the plan, vote on the plan by ballot." *Id.* The

court then conducts a confirmation hearing regarding the plan. In this case, the court confirmed Mr. Johnson's Chapter 11 bankruptcy plan, and he has made the payments required by the plan.

9. When Mr. Johnson filed his Schedule F regarding creditors who have unsecured claims, the form listed the balance being owed to FTB as $3,588.11 based on a administrative error when the balance should have been $6,992.94. However, Fifth Third failed to take the necessary action to disagree with the balance alleged in the Schedule F bankruptcy filing in a timely manner and, therefore, waived that right/opportunity. As a result, the balance is now permanently established at the lower amount owed by Mr. Johnson. FTB never responded to any ACDV in this action with the lower balanced owed when it responded to any ACDV. FTB's regulatory compliance issues are so poor that it likely does not even know that it failed to file a proper claim form in the bankruptcy court.

10. On November 26, 2019, Mr. Johnson filed his debtor's plan of reorganization with the bankruptcy court. The Plan contemplated distributing $16,500 *pro rata* among holders of nonpriority claims. In addition, the expectation in the plan was that Mr. Johnson would be able to obtain a construction loan against the property, ultimately move into the property and supplement the payments available for distribution to the holders of the nonpriority claims by using the money that he would no longer be paying in rent for a property for his family to reside.

11. On April 28, 2020, the bankruptcy court entered an order confirming the plan. Mr. Johnson had paid, and he continued to pay all the payments required by the plan.

12. Because Mr. Johnson was operating pursuant to the confirmed bankruptcy plan, his bankruptcy counsel moved for an administrative closure of the case on November

30, 2020. The motion in support stated in part, "Having substantially consummated the Plan, however, the Debtor now wishes to have the case closed in order to terminate the quarterly fee obligations that would otherwise continue to accrue in favor of the U.S. Trustee. The Debtor requests that this Court reserve jurisdiction explicitly for the purpose of allowing him to reopen the case once the payments under the Plan have been fully completed so that he may obtain entry of his discharge under 11 U.S.C. §1141(d)."

13. On December 16, 2020, the bankruptcy court entered on the docket an order that administratively closed the bankruptcy case. Based upon bankruptcy rules, administratively closing a case is good for the debtor and the creditors because it allows for less maintenance fees that can be better used as a source of funds to pay other bills. The order did not dismiss or close the Chapter 11 bankruptcy case. The order specifically stated in part that Mr. Johnson "effectuated the substantial consummation of his confirmed reorganization plan." The case was administratively closed such that upon completion of the debtor's payments under his confirmed plan of reorganization, the debtor may reopen this case for entry of a discharge and to conclude any incidental matters just as Mr. Johnson requested in the motion.

14. The administrative closure of the case did not impact the stay, nor did it mean that a final discharge was ordered, but it did mean that all activity in the main bankruptcy case is completed. As it pertains to Mr. Johnson, he continued to perform in accordance with the re-organization plan, and he was entitled to the protections of the stay in bankruptcy.

15. FTB knew that Mr. Johnson filed bankruptcy, and it credit reported that fact for some time. FTB's credit reporting reflected that nothing was currently past due, that

6

the account was protected by the bankruptcy filing, and that the account had been "Never late." Experian's credit reporting in March 2021 (March 4, 2021) reflected the manner that FTB reported the account as follows:



16. At some point, FTB modified its reporting on this trade line. Rather than continue to report as it had that the account was protected by the Chapter 11 bankruptcy filing such that FTB could no longer report that it was late or past due, it started reporting the account as 180 days late during the pendency of the bankruptcy. Discovery is necessary as to the exact circumstances that caused FTB to change the credit reporting for the account.

17. On or about July 14, 2021, Mr. Johnson reviewed a copy of his Experian credit file, and FTB was now reporting to Experian a derogatory 180 day late payment history from April 2019 until February 2021. FTB's reporting of the account was inaccurate and misleading because it did not reflect the true status that the account was protected from such payment history by the Chapter 11 bankruptcy filing. By July 14, 2021, FTB now reported the following information, which was dramatically different from what it reported just four months earlier in March 2021. The July 14, 2021, reporting was as follows:

7



18.     Because of this inaccuracy, Mr. Johnson submitted a dispute electronically to Experian about Fifth Third Bank and the inaccurate credit reporting. Mr. Johnson noted the account was included in bankruptcy and that the account payment history reported inaccurately. It also should be noted that FTB had also "re-aged" the date of first delinquency for the account as FTB also changed the credit reporting such that the account would remain on Mr. Johnson's credit file longer than FTB had previously reported (from September 2025 to October 2025.)

19.     On August 6, 2021, FTB responded to an ACDV that Experian issued. In the dispute reason identified by Experian, it stated that Mr. Johnson claimed that FTB was reporting inaccurate information and specifically stated, "THIS ACCOUNT IS INCLUDED IN MY CHAPTER 11 BANKRUPTCY AND PAYMENTS HAVE BEEN MADE UNDER THE ON-TIME ACCODING (Sic) TO THE BANKRUPTCY PLAN SINCE 7 2020." This ACDV put FTB on specific notice of the problem and that FTB reported an active past due payment history for an account that was included in bankruptcy.

20.     Susan Rick responded to the ACDV on behalf of FTB. In the ACDV response, Ms. Rick provided conflicting information back to Experian that could not coexist. Ms. Risk knew that the account was included in the Chapter 11 bankruptcy, so

she filled in the Consumer Information Indicator (CII) field with a "B" which denotes that the account is included in a Chapter 11 bankruptcy. In complete contradiction to that, she filled in the Account Status Rating Field as 93 (Account seriously past due and/or assigned to internal or external collections). She further filled in the balance and past due balance as well as the history grid with notations that the account was 180 days past due starting in April 2019. These additional data fields contradicted and were inconsistent with the CII code of "B."

21.    Ms. Ricks investigation was negligent and reckless because FTB knew that Mr. Johnson was involved in a Chapter 11 bankruptcy as demonstrated by paragraph fifteen of the Complaint. In addition, FTB was told as part of the FCRA dispute reason information about the timing related to the bankruptcy. Ms. Ricks simply could not have reviewed and considered the information in the ACDV, reviewed, and considered the available account level information and responded by stating that the account was in collections with a payment history of 180 days past due when the account was not reported previously as 180 days past due during that time period. Based upon information and belief, no furnisher would report on an ACDV current derogatory monthly payment history for an account that it knows is included in a bankruptcy.

22.    On August 7, 2021, Experian issued the result of the reinvestigation by stating that FTB had verified as accurate the reporting for the account that included a recent collection account balance of $6,903 with 180 days past due payment history for the months of April 2019 through June 2021. FTB reported inaccurate account status information to Experian that made the account appear as if it were not included in the bankruptcy and was a significant negative derogatory collection account.

23. On August 10, 2021, Experian's consumer file disclosure reported the following inaccurate information related to the Fifth Third Bank account as a result of FTB's ACDV response:



24. As demonstrated above, FTB's ACDV response contained conflicting data that made the account appear to Experian as if it were no longer and had never been included in the Chapter 11 bankruptcy. After that ACDV exchange, Experian updated its account records to remove the Bankruptcy and started reporting the account as seriously past due. This was objectively misleading and inaccurate information that FTB provided to Experian that caused it to make such a dramatic change to the credit reporting for the account.

25. From August 2021 through September 2021, FTB continued to report the inaccurate information to Experian such that the account remained on Mr. Johnson's credit file as an open collection account. FTB updated the past due balance such that it reported as a collection account with a past due balance, which was not in accordance with its failure to file a proper proof of claim in the bankruptcy court.

26. On October 1, 2021, Mr. Johnson issued credit dispute letters that disputed the items of information that reported inaccurately on his credit file. In his letter to Experian, Mr. Johnson stated the following about the FTB account:

> In addition, you are reporting inaccurate information related to an account that I had with Fifth Third Bank that was also included in the Chapter 11 bankruptcy. You are reporting that this is a collection account with $4,770 past due as of August 2021. This is not accurate credit reporting because this account was included in the bankruptcy and should be reported as such.
>
> Please review the bankruptcy filing when you review the order that administratively closed the case because the bankruptcy was not dismissed, and I do not owe Fifth Third Bank a past due debt that is a charge-off. Please correct this inaccurate credit reporting.

27. Based upon information and belief, Experian attached the entire credit dispute letter that it received from Mr. Johnson to an ACDV that it issued to FTB on October 6, 2021.

28. On October 28, 2021, Pam Schroeder responded to the Experian ACDV on behalf of FTB. This ACDV response was inaccurate, conflicting, and the result of a negligent and reckless reinvestigation. First, the ACDV response stated that the closed date for the account was August 28, 2018, but that the original delinquency date for the account was October 17, 2018. Next, the response stated that the current account status was "97" meaning that the account was a current charge-off. This was not accurate credit reporting because the account was currently being paid through a confirmed bankruptcy plan and was not an active charge-off. FTB knew that there were payments being made on the account and reported back in that ACDV that the date of last payment was August 4, 2021. Just as occurred in the previous response, FTB provided a full derogatory account history that gave the appearance that the account was not included in bankruptcy and was 180 days past due from August 2021 back to March of 2019. Given that the inaccurate October 2021 ACDV was materially similar in the types of inaccuracies as the previous

ACDV response, the reasonable inference is that FTB's ACDV processors lack the training, knowledge, and capacity to properly respond to ACDV disputes that involve accounts included in bankruptcy. Prior credit reporting proves that FTB's internal records reflect it knew that the account should only be reported as included in bankruptcy. r

29. As a result of FTB's ACDV response, Experian reported that the account was charged off with $7,204 written off and $6,903 past due. In addition, the charge off reported as current for the month of October 2021 with 180 days past due for the months reported back from April 2019 to August 2021. Here is a summary of what Experian reported after FTB Bank's ACDV response in October 2021:



30. Experian's website notes that a charge-off debt is owed by a consumer to the creditor and states in part, "Note that a charge-off does not mean that your debt is forgiven. You are still legally responsible for repaying the outstanding amount. As long as the account entry is designated as a charge-off and displays an outstanding balance, you can contact the creditor to make payment." *See* https://www.experian.com/blogs/ask-experian/what-is-a-charge-off/

31. Not only did FTB fail to report accurate information to Experian, but it also reported inaccurate account data to Equifax in the same time period. Mr. Johnson had disputed the inaccuracy with Equifax, but it is unknown if FTB received an ACDV directly

from Equifax. In any event, FTB had a duty under §1681s-2(b)(1)(D) to correct all of its data internally and then report the corrected information to all of the credit reporting agencies, which FTB clearly did not do as demonstrated by the inaccurate data that Equifax reported on October 16, 2021 about the FTB bank account:

[Credit report excerpt: FIFTH THIRD BANK, N.A. 5050 KINGSLEY DR MD 1MOCOP CINCINNATI OH 452630001 : 8009723030; Account Number ending 6709; Date Opened 04/23/2009; Terms Frequency Monthly; Months Revd 99; Activity Designator Closed; Date of Last Reported Update 09/29/2021; Date of Last Payment 08/2021; Date of Last Activity 08/2018; Date Closed 08/2018; Type of Loan - Credit Card; Whose Account - Joint Account; ADDITIONAL INFORMATION - Account Closed By Credit Grantor; Account History with Status Codes showing multiple "6" codes from 02/2019 through 05/2021.]

32. In October 2021, Mr. Johnson was trying to get a new mortgage to complete the construction of his residence. He had researched available lenders for ones that would approve a loan with his particular issues that he was in bankruptcy and needed a mortgage to complete construction in order to obtain an occupancy permit. The lender that he discovered was Flagstar Bank. One of the qualifications that he needed was that he did not have any active derogatory account status accounts post-bankruptcy. When Flagstar obtained copies of Mr. Johnson's credit file, the FTB Bank reported its trade line as a current charge-off balance. Based upon information and belief, this was a substantial factor in his inability to get approved for a mortgage with Flagstar Bank, which caused a loss by virtue of the delay in completing construction of his property, lost time trying to solve the problem caused by FTB's credit reporting inaccuracies and subsequent increase in the rates for a home mortgage.

## COUNT I
## Fair Credit Reporting Act
## 15 U.S.C. 1681 s-2(b)

33. Plaintiff incorporates paragraphs one (1) through thirty-two (32) as if fully stated herein.

34. FTB both negligently and intentionally violated the Fair Credit Reporting Act at 15 U.S.C. §1681s-2(b) by failing to conduct reasonable or thorough investigations with respect to the disputes that it received as part of the ACDVs that have been previously identified in the facts.

35. Pursuant to 15 U.S.C. §1681s-2(b)(1), a furnisher has mandatory investigation requirements after it receives an ACDV from a consumer reporting agency. After receiving the ACDV a furnisher must:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report the results to all other credit reporting agencies to which the person furnished the information; and

(E) If an item of information disputed by a consumer is found to be inaccurate or incomplete, or cannot be verified after any reinvestigation required pursuant to the statute, modify, delete, or permanently block the reporting of that information.

*See* 15 U.S.C. § 1681s-2(b)(1).

36. The FCRA authorizes punitive damages for willful violations of the statutory duties identified in the statute. The clear instruction and long-standing precedent

of cases analyzing 15 U.S.C. §1681s-2(b) hold that a reasonable furnisher investigation under the FCRA requires a systemic inquiry and not just a cursory examination of computer records as occurred in all of the "investigations" in this case. *See Johnson v. MBNA, Inc.* 357 F.3d 426, 430-431 (4th Cir. 2004) *stating* "Thus, the plain meaning of 'investigation' clearly requires some degree of careful inquiry by creditors. Further, § 1681s-2(b)(1)(A) uses the term 'investigation' in the context of articulating a creditor's duties in the consumer dispute process outlined by the FCRA. It would make little sense to conclude that, in creating a system intended to give consumers a means to dispute - and, ultimately, correct - inaccurate information on their credit reports, Congress used the term 'investigation' to include superficial, *unreasonable* inquiries by creditors."

37. Courts have held that reasonable investigations may require more than just a review of internal documentation. This is especially true when among the allegations is that the documents relating to the underlying transaction are flawed. "A jury could therefore find it was unreasonable for Chase to not expand its investigation beyond its own internal records." *See Petras v. Navy Federal Credit Union*, 2:20-cv-00874, United States District Court of Nevada, Document 98, page 10 of 13 filed 2/22/22.

38. Given the facts of this matter, FTB disregarded even a cursory review of its own records let alone the detailed systematic approach required for proper FCRA investigations with consultation of available information outside of its own records. In all likelihood, FTB implements this policy to keep the cost of credit dispute investigations low with no regard to the great harm that it causes consumers.

39. As described in the factual averments, FTB failed to reinvestigate the ACDVs in a fashion that was in compliance with the statute. FTB ignored that it knew that

the account was included in bankruptcy, ignored its obligations to report a proper account status, and ignored its duties to report an accurate account payment history. With full knowledge of the bankruptcy filing, copies of the bankruptcy court orders, and with the warning of the ACDVs, FTB recklessly disregarded all of this information and account level documentation when it responded to ACDVs. These actions were both reckless and negligent violations of §1681s-2(b).

40. These reckless investigations allowed the inaccurate FTB trade line data to remain on Mr. Johnson's credit report during a time period when he was desperately seeking a mortgage refinance from a limited subset of creditors. This adverse trade line impacted his ability to obtain credit or have access to his credit. Mr. Johnson suffered frustration and distress from this trade line and his inability to get FTB to correct the inaccurate credit reporting. The repeated verifications from FTB forced Mr. Johnson to continue to draft dispute letters to the CRAs and await the results of the reinvestigation letters, which caused a loss of time.

41. Extensive punitive damages are warranted by the facts of this matter because FTB has ignored the clear instruction and long-standing precedent of the requirements of a reasonable furnisher investigation under the FCRA. From the very beginning FTB knew that the account was included in a Chapter 11 bankruptcy and reported as such as late as March of 2021. FTB changed the reporting, which made the credit reporting inaccurate. With full knowledge of the bankruptcy filing, FTB decided to start reporting an inaccurate payment history, disregard reporting that the account was in bankruptcy, and damaged Mr. Johnson's credit even further by stating that the account was

in collections and later a charge-off account when it never should have reported these account statuses after the filing of the bankruptcy petition and approval of the plan.

42. FTB disregarded actual notice that the account was included in bankruptcy or even a cursory review of its own records let alone the detailed systematic approach required for proper FCRA investigations. As the facts detail, FTB ignored the account level documentation in its own records regarding the bankruptcy. FTB also failed to obtain, review, or consider information available from the bankruptcy court, Mr. Johnson's dispute letter, and information provided by the credit reporting agencies. Discovery is necessary as to whether FTB's procedures ever require the acquisition of information related to the transaction outside of its own internal records. In all likelihood, FTB does not obtain all information available to it for a reasonable investigation and maintains this policy to keep the cost of credit dispute investigations low with no regard to the great harm that it causes consumers.

43. Plaintiff is entitled to actual damages, statutory damages, and punitive damages based upon the violations of the Fair Credit Reporting Act. Plaintiff suffered damages in the form of the loss of time working to correct the reporting of the inaccurate account, inability to refinance a mortgage to complete construction of his property, loss of access to credit, and frustration and aggravation of dealing with problems related to the FTB account as well as all attorney's fees and costs.

### Prayer for Relief

Wherefore, the plaintiff prays that the Court award the following relief:

a) compensatory damages against FTB;

b) punitive damages based upon FTB's repeated violations of the FCRA;

  c)  statutory damages against FTB based upon multiple violations of the FCRA;

  d)  interest, pre-judgment interest, costs and reasonable attorneys' fees;

  e)  all other further relief that this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury as to all issues against all defendants.

          Respectfully submitted
          E. WRAY JOHNSON
          By: Counsel

          _____
          A. Hugo Blankingship, III
          Thomas B. Christiano, Esq.
          Blankingship & Christiano, P.C.
          11862 Sunrise Valley Dr., Suite 201
          Reston, Virginia 20191
          hugo@blankingship.com
          (571) 313-0412
          Fax:(571) 313-0582